IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMERICAN TECHNOLOGIES, INC., | § § § | |
| Plaintiff, | § § | |
| V. | § § | CIVIL ACTION NO. H-19-1037 |
| COPPERTREE VILLAGE HOLDINGS, LLC d/b/a COPPERTREE INVESTMENTS I, LLC, et al., | § § § § § | |
| Defendant, | § § | |
| TRIUMPH HOUSING MANAGEMENT, LLC, | § § § | |
| Third Party Plaintiff, | § § | |
| V. | § § | |
| THE CONE COMPANY, INC. and AMWINS BROKERAGE OF ALABAMA, LLC, | § § § § § | |
| Third Party Defendants. | § § | |

## MEMORANDUM AND RECOMMENDATION

Pending in this case that has been referred by the District Judge to the undersigned Magistrate Judge is Third Party Defendant the Cone Company, Inc.'s Motion to Dismiss under Rule 12(b)(2) and 12(b)(6) (Document No. 54).[1] After considering the Motion to Dismiss, the responses, the parties' evidence, the withdrawal of the Rule 12(b)(6) argument for dismissal based

---

[1] The Motion to Dismiss was filed before Triumph Housing Management, LLC filed bankruptcy (Document No. 32), and was re-urged once the bankruptcy stay was lifted (Document No. 54).

1

on res judicata, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that the Motion to Dismiss is GRANTED.

## I. Background

Triumph Housing Management, LLC ("Triumph") is a property management company, incorporated in Georgia with its principal place of business in Alpharetta, Georgia. Triumph manages, but does not own, numerous properties throughout the Southeast United States ("Properties"). One of these Properties is the property located at 1415 West Gulf Bank Road, Houston, Texas ("Coppertree Property"), which is the subject of this action.

The Cone Company, Inc. ("Cone") is an insurance procurer, incorporated in Alabama with its principal place of business in Montgomery, Alabama. Cone has never owned or leased real or personal property in Texas. It pays no taxes in Texas, and it is not licensed to sell insurance in Texas. Cone maintains no place of business or employees in Texas. It does not advertise, solicit, or conduct business in Texas.

In 2017, Triumph solicited Cone to provide pricing for property insurance of the same kind that it held under the master policy covering the Properties at that time. The master policy provided blanket coverage for each property.

Triumph provided information to Cone, including the descriptions and locations of the Properties. Cone approached AmWINS, a wholesale insurance broker, to assist Cone in placing coverage for the Properties. AmWINS, in turn, contacted General Star Indemnity Company to obtain the insurance sought by Triumph through Cone. All communication between Triumph and General Star were relayed through Cone and AmWINS. Additionally, all of these communications were conducted by agents located outside the state of Texas.

On October 30, 2017, Tricia Curry, a Cone employee, informed Triumph's Chief Executive Officer, Paul Ponte, that Cone had obtained coverage for the Properties through a policy ("the Policy") issued by General Star. Curry further reported that Cone had applied for the blanket insurance Triumph requested, and that she understood that the Policy was to provide blanket coverage. Mr. Ponte accepted the terms of the Policy. The Policy became effective November 1, 2017.

On December 9, 2017, a fire occurred at the Coppertree Property, causing significant damage. Several other of the Properties sustained damage around the same time. Triumph reported the Coppertree claim and other claims to General Star. General Star, in turn, alleged that the Policy only provided schedule coverage. Additionally, when the discrepancies between Triumph's expectations and the actual coverage provided under the Policy were discovered, General Star refused to provide any coverage. Thus, the Coppertree Property was left without insurance protection.

On February 22, 2019, Plaintiff American Technologies, Inc. ("ATI") sued Defendant Triumph for an alleged failure to pay ATI for its fire-remediation work. On June 28, 2019, Triumph brought a third-party complaint in this Court against Cone, AmWINS, and General Star, alleging negligence and negligent misrepresentation claims related to the procurement of the Policy. In that third-party complaint, Triumph alleged that "[t]his Court has personal jurisdiction over both Cone and AmWINS as each has sufficient contacts with the forum state, Texas." Cone filed a motion to dismiss pursuant Rule 12(b)(2), arguing that the Court lacks personal jurisdiction because none of the alleged events giving rise to the suit occurred in Texas and Cone never directed its activities at Texas. Cone also asserts that the location of the Coppertree Property in Texas, standing alone, does not provide a sufficient basis for the Court to exercise personal jurisdiction over it. Triumph

responds that Cone purposefully availed itself of Texas law by purposefully directing tortious conduct at the State of Texas.

II. **Standard of Review**

When a defendant contests personal jurisdiction through a motion to dismiss without an evidentiary hearing, the plaintiff must establish a prima facie case of personal jurisdiction. *Alpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 215 (5th Cir.2000). To establish a prima facie case, the plaintiff must show that (1) the long arm statute of the forum state confers jurisdiction over the defendant; and (2) "the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution." *Ruston Gas Turbines, Inc. v. Donaldson Co.,* 9 F.3d 415, 418 (5th Cir.1993). When deciding whether to dismiss for lack of personal jurisdiction, uncontroverted facts are to be taken as true and conflicts in evidence are to be resolved in favor of the plaintiff. *See Alpine View Co.,* 205 F.3d at 215; *Guidry v. U.S. Tobacco Co.,* 188 F.3d 619, 625 (5th Cir.1999) (citing *Bullion v. Gillespie,* 895 F.2d 213, 217 (5th Cir.1990)); *see also Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.1994). When unsupported allegations are controverted by affidavit or declaration, the facts contained in the affidavit or declaration are to be taken as true. *Travelers Indemnity Co. v. Calvert Fire Ins. Co.,* 798 F.2d 826, 831 (5th Cir.1986), *modified on other grounds,* 836 F.2d 850 (5th Cir.1988); *Diamond Offshore Co. v. A & B Builders, Inc.,* 75 F.Supp.2d 673, 674 (S.D.Tex.1999).

Because the Texas long arm statute extends to the lengths of due process, our inquiry will only consider whether the exercise of personal jurisdiction over the non-resident defendant comports with the due process requirements of the U.S. Constitution. *Ruston Gas Turbines, Inc.,* 9 F.3d at 418; *Guyton v. Pronav Ship Management, Inc.,* 139 F.Supp.2d 815, 817-18 (S.D.Tex.2001). To satisfy due process, a plaintiff must establish both that the defendant has the

4

requisite minimum contacts with the forum and that exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Certain minimum contacts may give rise to either (1) general personal jurisdiction; or (2) specific personal jurisdiction. *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997).

### III. Discussion

General personal jurisdiction allows the court to exercise personal jurisdiction over the defendant even when the suit does not arise from the defendant's forum related conduct. *Allred*, 117 F.3d at 286. To establish general jurisdiction, the plaintiff must show that the defendant's contacts with the forum are so continuous and systematic that the defendant is effectively at home in the forum. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). In the present action, Cone's forum contacts are clearly insufficient to confer general jurisdiction, and Triumph does not contend otherwise. Thus, our analysis shall focus on whether defendant has sufficient minimum contacts with the forum for this Court to exercise specific personal jurisdiction.

Specific personal jurisdiction has less extensive requirements than general jurisdiction with regards to the quality and nature of the defendant's minimum contacts with the forum. *Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.,* 963 F.2d 90, 94 (5th Cir. 1992). To establish specific personal jurisdiction, the plaintiff must show that (1) the defendant has purposefully availed himself of the forum state's laws and privileges; (2) the defendant's forum related conduct gave rise to the litigation; and (3) the exercise of jurisdiction does not violate traditional notions of fair play and substantial justice. *Monkton Insurance Services v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014).

A defendant purposefully avails himself of the forum state when he has purposefully directed his actions at the forum with the intention of deriving some benefit, profit, or advantage. *Cooper Gay Martinez del Rio y Asociados Intermediarios de Reaseguro S.A. de C.V. v. Elamex, S.A. de C.V.,* No. 05-16-01436-CV, 2017 WL 3599690, at *5 (Tex. App. Aug. 22, 2017) (noting that the defendant must seek some benefit, advantage, or profit by availing itself of the forum such that it could reasonably anticipate and implicitly consents to being called into a forum court). A defendant's forum contacts cannot arise from the unilateral actions of the plaintiff or a third party. *Walden v. Fiore,* 571 U.S. 277, 284 (2014). Additionally, a defendant's contacts with the forum also cannot be random, isolated, fortuitous, or attenuated. *Id.* at 285.

A non-resident defendant may purposefully avail himself of the forum state in multiple ways. For example, in the transactional context, a non-resident defendant may purposefully avail himself of the forum when he has reached beyond the boundaries of his own state and into the forum to initiate business or enter into a long-term contractual relationship that envisions continuing and wide-ranging contacts with the forum. *Id. See McGee v. International Life Ins. Co.,* 355 U.S. 220, (1957) (holding that a Texas insurance company purposefully availed itself of California law by reaching out to a California resident through mail to form an insurance contract and continuously received insurance payments from the California resident). *See also Seguros Afirme, S.A. de C.V. v. Elamex, S.A. de C.V.,* No. 05-16-01465-CV, 2017 WL 3599693, at *7 (Tex. App. Aug. 22, 2017) (finding that the defendant did not purposefully avail itself in Texas by contracting with Texas companies to insure Texas properties when it did not initiate its business interactions with the Texas parties and there was no further evidence that the defendant sought to benefit form Texas law or develop a Texas business).

A defendant may also purposefully avail himself of the forum when he (1) commits an intentional tort; (2) intentionally and expressly aims his tortious conduct at the forum; and (3) causes the plaintiff to feel the brunt of the harm in the forum state. *Calder v. Jones,* 465 U.S. 783, 789 (1984). For intentional tortious conduct to be expressly aimed at the forum, the defendant must both know that the plaintiff would feel the brunt of the harm in the forum and commit some additional specific act or acts directed at the forum. *Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 212 (5th Cir. 1999) ("Foreseeable injury alone is not sufficient to confer specific jurisdiction"). *See Cooper Gay Martinez del Rio y Asociados Intermediarios de Reaseguro S.A. de C.V. v. Elamex, S.A. de C.V.,* No. 05-16-01436-CV, 2017 WL 3599690, at *5 (Tex. App. Aug. 22, 2017) (recognizing that a defendant's mere knowledge that the plaintiff would likely suffer the brunt of the harm in the forum state does not sufficiently demonstrate that the defendant has expressly aimed its tortious conduct at the forum).

For example, in *Calder v. Jones*, Florida defendants wrote and edited an allegedly libelous article about a California resident that was widely published in California. *Calder,* 465 U.S. at 785. The court noted that the defendants not only knew the article would be widely published in California and thus cause harm there, but also that the forum functioned as the focal point of the intentional tort at every stage of its commission. *Id.* at 788-789. Moreover, the court noted that the allegedly defamatory article wholly concerned the California activities of a California resident and directly impugned the plaintiff's professionalism in the state where her career was based. *Id.* The court further noted that the defendants made numerous phone calls to California sources to compile information for the article. *Id.* Based on these additional direct forum centric actions, the court concluded that the defendants intended to cause harm in the forum. *Id.*

Similarly, in *Union Carbide Corp. v. UGI Corp.,* the court determined that the defendants had purposefully directed their tortious inference with the plaintiff's contract to supply oxygen to a Texas steel plant because they had held a meeting in which they specifically discussed the Texas mill "problem." *Union Carbide Corp. v. UGI Corp.,* 731 F.2d 1186, 1190 (5th Cir. 1984). *See Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 779 (1984) (holding that the forum need not serve as the focal point of the tortious conduct when the defendant has continuously and deliberately exploited the forum market). Without evidence of such additional specific forum directed activities, the court cannot determine that the defendant's tortious conduct was expressly aimed at the forum. *Calder,* 465 U.S. at 789 (recognizing that untargeted negligence which harms a plaintiff in the forum is an insufficient basis for establishing purposeful availment).

In the present action, Triumph has failed to provide any factual allegations demonstrating that Cone formed sufficient business contacts with Texas as to purposefully avail itself of Texas law. It is uncontroverted that Cone does not maintain any personnel or place of business in Texas. It is not licensed to sell insurance in Texas, and it neither solicits nor conducts business in Texas. Unlike the communications and contacts discussed in *McGee*, all communications and contacts between the parties in this case occurred outside of the State of Texas. Additionally, unlike the defendant in *McGee*, Cone did not initiate its litigation-related dealing with the plaintiff or its supposed connections to Texas. Rather, Cone's supposed connections with Texas only arose after Triumph solicited Cone to provide pricing for property insurance coverage on the Properties. There is no evidence that Cone knew that Triumph had connections with Texas or that a Texas property was contained within the portfolio when entered into its dealings with Triumph. Accordingly, there is no evidence indicating that Cone sought to establish a business connection with Texas, develop a Texas business, or benefit from Texas' laws or market through its dealings with Triumph. There

is also no evidence that Cone, in fact, did so. To the contrary, Cone's dealings with Triumph were themselves limited in duration and had only an attenuated connection to the Coppertree Property in Texas. Thus, like the defendant in *Seguros Afirme,* Cone's business contacts with Texas are the result of unilateral actions on the part of Triumph and are too attenuated to establish purposeful availment.

Perhaps recognizing Cone's general lack of substantial contacts with Texas, Triumph relies solely on the principles of the effects test posited in *Calder* to assert that this Court may properly exercise jurisdiction over Cone. Specifically, Triumph claims that since Cone had notice that some of the structures that were to be covered under the Policy were in Texas and those structures were affected by Cone's tortious conduct, the Court may properly conclude that Cone purposefully directed its tortious conduct at Texas.

This contention misapprehends the nature of the effects test in the purposeful availment analysis. Moreover, the present case is readily distinguishable from *Calder* and other like cases. In *Calder*, the court determined that the defendants expressly aimed intentional tortious conduct at the forum because they knew the allegedly libelous story would be widely published in the forum and actively committed specific acts directed at the forum. Specifically, the defendants composed a forum centric story and directly reached out to forum sources. By contrast, in the present case, Triumph does not contend that Cone committed an intentional tort. Rather, Triumph only alleges that Cone engaged in general negligence and negligent misrepresentation. Negligence, by definition, does not require or indicate that the defendant intended to cause harm at all, let alone in a particular forum.

While negligence can have foreseeable effects in a specific forum, such foreseeable harm does not establish purposeful availment without additional specific acts directed at the forum. In

this case, Triumph has provided no grounds for the Court to conclude that Cone engaged in any such act. Moreover, Triumph has not cited a single instance in which Cone specifically discussed the Coppertree Property, let alone misrepresented the nature of its coverage under the Policy. Furthermore, this Court cannot assume from the circumstances of this case that Cone engaged in specific forum directed acts. On the contrary, unlike in *Calder*, the forum state in this action never functioned as the focal point of the parties' conduct. Rather, the transaction in controversy here involved numerous properties in many different states, and all parties appear to have handled the transaction without distinguishing the Properties according to identity or location. As such, Cone's alleged tortious conduct appears as nothing more than untargeted negligence, which cannot establish purposeful availment under the effects test.

With the effects test not having been met, and there being no authority that would allow for the exercise of personal jurisdiction over Defendant Cone based on the sole fact that the Coppertree Property is located in the State of Texas, the Court is without personal jurisdiction over Defendant Cone, and its Rule 12(b)(2) Motion to Dismiss should be granted.

### IV.    Conclusion and Recommendation

Based on the foregoing and the conclusion that the Court does not have personal jurisdiction over Defendant the Cone Company, Inc., the Magistrate Judge

RECOMMENDS that Defendant the Cone Company, Inc.'s Re-Newed Motion to Dismiss (Document No. 54) be GRANTED and Defendant the Cone Company, Inc. be DISMISSED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), to the recommendation made herein relative to Defendant's Motion to Dismiss.  Failure to file objections within such

period shall bar an aggrieved party from attacking factual findings on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen-day period bars an aggrieved party from attacking conclusions of law on appeal. *See Douglass v. United Serv. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Court Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this __19th__ day of July, 2021.

*Frances H. Stacy*

_____
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE